Merrimack
No. 2008-407

IN THE MATTER OF THE LIQUIDATION OF THE HOME
INSURANCE COMPANY

Argued: March 12, 2009
Opinion Issued: May 7, 2009

678

*Kelly A. Ayotte*, attorney general (*J. Christopher Marshall*, attorney, on the brief), and *Rackemann, Sawyer & Brewster P.C.*, of Boston, Massachusetts (*J. David Leslie* and *Eric A. Smith* on the brief, and *Mr. Leslie* orally), for the respondent.

*Orr & Reno, P.A.*, of Concord (*Lisa Snow Wade* on the brief), and *Morrison & Foerster LLP*, of New York, New York (*Gary S. Lee & a.* on the brief, and *Brian R. Matsui* orally), for the appellee.

DALIANIS, J. The respondent, Roger A. Sevigny, Commissioner of Insurance of the State of New Hampshire, as liquidator of The Home Insurance Company (the liquidator), appeals an order of the Superior Court (*Conboy*, J.) sustaining a referee's ruling granting a setoff claim asserted by the appellee, Century Indemnity Company (CIC), in the liquidation of The Home Insurance Company (Home). We reverse and remand.

This is the fourth in a series of opinions we have issued in connection with the liquidation of Home. *See In the Matter of Liquidation of Home Ins. Co.*, 154 N.H. 472 (2006) (*Home I*); *In the Matter of Liquidation of Home Ins. Co.*, 157 N.H. 543 (2008) (*Home II*); *In the Matter of Liquidation of Home Ins. Co.*, 158 N.H. 396 (2009) (*Home III*). The following facts either are drawn from our prior opinions or are supported by the record in the instant appeal.

Home is an insurance company, organized under the laws of New Hampshire, which was declared insolvent and placed in liquidation in 2003. *Home II*, 157 N.H. at 544. The liquidator is vested with title to and charged with administering and collecting Home's assets for distribution to Home's creditors. *Home I*, 154 N.H. at 475. All persons asserting claims against Home must file proofs of claim in the New Hampshire liquidation proceeding. *Id.*

CIC is an insurance company organized under the laws of Pennsylvania, which reinsures Home with respect to certain contracts between Home and other insurers. *Home II*, 157 N.H. at 544-45. As claims under these contracts are allowed against Home in liquidation, CIC remits funds to

Home pursuant to an agreed-upon claims protocol. *Id.* at 545. This means that for the purposes of the liquidation proceeding, CIC is a debtor of Home. The claims protocol provides that these payments "shall be net of set off in compliance with" RSA 402-C:34 (2006), or as otherwise allowed under New Hampshire law. *Id.*

■ "Setoff is the process by which two contracting parties reduce mutual debts and credits to arrive at a net balance." Branum *et al.*, *Setoffs, Recoupments, & Voidable Preferences — In the Insolvency Process, in* AMERICAN BAR ASSOCIATION, LAW AND PRACTICE OF INSURANCE COMPANY INSOLVENCY REVISITED 909 (Semaya ed. 1989). Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 18 (1995) (quotation omitted).

In addition to being a reinsurer of Home, CIC is a co-insurer with Home of Pacific Energy Company (PECO), meaning that both CIC and Home are primary insurers of PECO. The disputed setoff claim arose in connection with a 2005 confidential settlement agreement between PECO and CIC to which Home was not a party. Under this agreement, governed by Pennsylvania law, CIC paid PECO $13 million to settle certain environmental coverage claims and agreed, among other things, not to "seek indemnification for, reimbursement of, contribution toward or subrogation rights concerning" amounts it paid under the agreement from "any *other* insurer or alleged insurer of PECO." CIC was allowed, however, to pursue its rights for indemnification, reimbursement, contribution or subrogation against its own reinsurers and against any insurer that sought contribution from it.

In 2007, CIC and PECO entered into another agreement, concerning asbestos liabilities, and, for "collective consideration," also amended the 2005 agreement. (Emphasis omitted.) The amendment specifically allowed CIC, at its own expense, to "seek indemnification for, reimbursement of, contribution toward or subrogation rights concerning, or exercise any other rights it may have to recover" amounts it paid to PECO under the 2005 agreement "from any currently insolvent insurer of PECO." Home was not a party either to the 2007 agreement or to the amendment to the 2005 agreement.

Thereafter, CIC filed a claim under the claims protocol, seeking to setoff $8 million of the $13 million PECO settlement against reinsurance amounts the liquidator was asserting against CIC. CIC argued that Home owed it $8 million out of the $13 million settlement with PECO under the doctrines of subrogation and contribution.

The liquidator disagreed with the validity of the asserted setoff and the parties jointly requested that the referee deem the matter a disputed claim

proceeding to be resolved in accordance with RSA chapter 402-C and an established claim procedure order. *See Home II*, 157 N.H. at 546. The referee granted the setoff. The trial court sustained this decision, and this appeal followed.

On appeal, the liquidator argues that RSA 402-C:34, II(b) precludes the asserted setoff. The interpretation of a statute is a question of law, which we review *de novo. Id.* We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.* at 547.

The right of setoff with respect to debts owed to an insolvent insurer is typically governed by statute. Dassenko, *Obligations and Duties of the Liquidator to Reinsurers: A Liquidator's Perspective, in* AMERICAN BAR ASSOCIATION, *supra* at 663. Such statutes generally allow persons, including reinsurers, to set off mutual debts or mutual credits against the insolvent party, except under certain circumstances. *Id.* In New Hampshire, setoff against an insolvent insurer is governed by RSA 402-C:34.

■ RSA chapter 402-C is a broad remedial statute aimed at protecting "preferred creditors by reserving assets for them, including people insured by Home, and people with claims against those insured by Home." *Home I*, 154 N.H. at 488; *see* RSA 402-C:1, IV (2006). Another legislative purpose is to "obtain[] full payment from reinsurers despite an insurer's insolvency." *Home I*, 154 N.H. at 488; *see* RSA 402-C:36, :49 (2006). RSA 402-C:1, III (2006) directs that RSA chapter 402-C be "liberally construed" to effect its purposes. *Home I*, 154 N.H. at 488.

■ RSA 402-C:34, I, provides: "SETOFFS ALLOWED IN GENERAL. Mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter shall be set off and the balance only shall be allowed or paid, except as provided in paragraph II." This provision is mandatory. It grants the liquidator no discretion to disallow a setoff that meets all of the statutory requirements. *Home II*, 157 N.H. at 553-54. Because "setoff is an exception to the orderly procedures for discharging claims against an insolvent debtor," *Koken v. Legion Ins. Co.*, 900 A.2d 418, 423 (Pa. Commw. Ct. 2006), RSA 402-C:34, I, allows setoff only where mutuality of obligation exists. To be mutual, debts to be set off must be due to and from the same persons in the same capacity. *Home II*, 157 N.H. at 547.

RSA 402-C:34, II sets forth three exceptions to the setoff mandate. We are concerned with RSA 402-C:34, II(b), which provides: "No setoff shall be

allowed in favor of any person where[] . . . [t]he obligation of the insurer to the person was purchased by or transferred to the person with a view to its being used as a setoff." RSA 402-C:3, XVII (2006) defines a "transfer" to include "the sale and every other method, direct or indirect, of disposing of or parting with property or with an interest therein or with possession thereof."

■ In this case, for the purposes of RSA 402-C:34, II(b), Home is the "insurer" and CIC is the "person" seeking setoff. *See* RSA 402-C:2, :3, III (2006). The "obligation" at issue is Home's obligation to provide contribution to CIC. Thus, RSA 402-C:34, II(b) precludes a setoff in CIC's favor where it purchased, or had transferred to it, Home's obligation to provide contribution to it with a view to using this as a setoff against amounts it owes to Home as Home's reinsurer. Because CIC concedes that it entered into the 2007 transaction for the purpose of obtaining a setoff, the issue before us is whether this transaction constituted the "purchase" or "transfer" of Home's obligation to provide contribution.

CIC contends that it never purchased, or had transferred to it, Home's obligation to provide contribution because this obligation arose in 2005 as a matter of law under the doctrine of joint and several liability. Under Pennsylvania law, which governed the 2005 agreement, CIC was jointly and severally liable to PECO for the entirety of its claim. *See J.H. France Refractories v. Allstate*, 626 A.2d 502, 509 (Pa. 1993). As CIC contends that it paid more than it owed, it obtained a right to seek contribution from Home. *See id.; see also* 15 L. RUSS & T. SEGALLA, COUCH ON INSURANCE 3D § 217:4, at 217-12 (1999) (right to contribution among insurers arises when "single insured is covered by concurrent . . . insurance, and one insurer paid all, or greater than its share, of a loss").

Despite its 2005 agreement with PECO not to seek contribution from PECO's other insurers, CIC contends that Home's obligation to it and its right to enforce the obligation remained intact. CIC argues that, in 2007, when it paid PECO consideration to amend the 2005 agreement, it merely obtained the right to pursue Home for contribution unfettered by a potential breach of contract action by PECO. CIC asserts that the consideration it paid PECO for the amendment to the 2005 agreement was the "purchase" of the right to be relieved of its prior promise not to seek contribution from Home and of the threat of a breach of contract action for doing so. RSA 402-C:34, II(b), CIC contends, does not preclude this "purchase" because it was not a "purchase" of Home's obligation to provide contribution.

■ CIC's argument has some appeal, as it rests upon the literal, plain meaning of RSA 402-C:34, II(b). We must reject this narrow construction of

RSA 402-C:34, II(b), however, because we are mandated by statute to construe RSA chapter 402-C liberally to effectuate its purposes.

■ A principal purpose of RSA chapter 402-C is to reserve assets for preferred creditors. *Home I*, 154 N.H. at 488. An additional purpose is to ensure that Home's reinsurers make full payment despite Home's insolvency. *Id.*; *see* RSA 402-C:36, :49 (2006). Construing the exceptions to the setoff mandate narrowly is contrary to these purposes. We must, therefore, construe the exceptions to the setoff mandate broadly to achieve the purposes of RSA chapter 402-C. *Cf. Home I*, 154 N.H. at 488 (discussing need to liberally construe another provision of RSA chapter 402-C).

■ Here, CIC agreed with PECO in 2005 that it would not seek contribution from Home. In 2007, CIC paid PECO consideration in exchange for the ability to assert such a claim. CIC conceded that it entered into this arrangement with a view to using the claim as a setoff. While before the 2007 amendment, CIC had contracted not to bring a contribution claim against Home, after it paid PECO consideration to amend the 2005 agreement, which it did with a view to using its contribution claim as a setoff, it was free to bring such a claim. We believe that this transaction is the "purchase" or "transfer" of Home's obligation to provide contribution, and/or CIC's right to enforce this obligation, within the meaning of RSA 402-C:34, II(b). As the liquidator aptly observes, "CIC's distinction between a claim and the right to assert the claim is too fine. Where CIC paid specifically to obtain the ability to setoff, . . . the 2007 transaction is comprehended within RSA 402-C:34, II(b)."

At the very least, as a result of the 2007 transaction, PECO "part[ed] with" its interest in preventing CIC from enforcing Home's obligation to provide contribution. As CIC concedes, the 2007 amendment "extinguish[ed] PECO's right to prevent CIC from collecting or setting off the Home Contribution." This constitutes a "transfer" within the meaning of RSA 402-C:34, II(b). *See* RSA 402-C:3, XVII.

■ Disallowing CIC's setoff comports with the overall purpose of the setoff provision, which is to prevent debtors of insolvent insurers from acquiring claims for use as setoffs to reduce their obligations to the detriment of the insurer's creditors. *Cf. Continental Trust Co. v. Chi. Title Co.*, 229 U.S. 435, 444 (1913) (discussing purpose of Section 68 of the Federal Bankruptcy Act of 1898, upon which the parties agree RSA 402-C:34, II(b) was based).

This is not to say that CIC, as a reinsurer of Home, may *never* use setoff to reduce the amounts it owes Home. RSA 402-C:34 specifically gives CIC

this right, provided certain requirements are met, as does the claims protocol. *See Home II*, 157 N.H. at 553.

In this case, as the liquidator concedes, had CIC not agreed in 2005 to not seek contribution against Home, it could have done so and asserted its contribution claim as a setoff under RSA 402-C:34. The problem here is that not only did CIC agree in 2005 not to assert a contribution claim against Home, but also, in 2007, it paid PECO money to be relieved of this agreement. Such conduct falls within one of the statutorily created exceptions to the setoff mandate, broadly construed.

■CIC contends that RSA 402-C:34, II(b) applies only when a liquidated insurer's debtor purchases a claim that belongs to another party. CIC, in effect, purchased its own claim for contribution against Home, not a claim that belonged to another party. RSA 402-C:34, II(b), however, is not limited to the purchase or transfer of claims belonging to other parties. There is nothing in the plain language that precludes applying RSA 402-C:34, II(b) to the instant case.

For all of the above reasons, therefore, we hold that the trial court erred when it ruled that CIC's setoff was permissible. While the liquidator contends that Home's estate is entitled to interest at a legal rate on payments CIC wrongfully withheld based upon setoff, we decline to decide this issue in the first instance, without prejudice to the liquidator making this argument to the trial court.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.