# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| IN THE MATTER OF THE REHABILITATION | : | C.A. 2019-0175-AGB |
| OF SCOTTISH RE (U.S.), INC. | : | |
| | : | |

## ORDER GRANTING THE RECEIVER'S
## MOTION TO DISMISS THE VERIFIED AMENDED PETITION
## OF PROTECTIVE LIFE INSURANCE COMPANY, PROTECTIVE
## LIFE AND ANNUITY INSURANCE COMPANY, WEST COAST LIFE
## INSURANCE COMPANY, AND MONY LIFE INSURANCE COMPANY

WHEREAS:[1]

A.      Protective Life Insurance Company is the parent company of Protective Life and Annuity Insurance Company, West Coast Life Insurance Company, and MONY Life Insurance Company (collectively, the "Protective Entities"). Since 1972, one or more of the Protective Entities have entered into or assumed approximately 60 reinsurance agreements under which Scottish Re (U.S.), Inc. ("Scottish Re") reinsures a portion of their life insurance policies.[2] The Protective Entities also have agreements with third-party life insurers under which they coinsure and administer third-party business reinsured with Scottish Re.[3]

---

[1] The facts recited herein are taken from the verified amended petition filed on October 28, 2019. Verified Amended Petition ("Petition") (Dkt. 297).

[2] Petition ¶ 1.

[3] *Id.*

B.    Beginning in February 2016, Scottish Re sought to increase the reinsurance premium rates on some of the reinsurance treaties.  The Protective Entities disputed Scottish Re's right to do so.  At this time, Scottish Re had fallen behind on reimbursing the Protective Entities for claims paid.[4]

C.    After negotiating for nearly two years, Scottish Re and each of the Protective Entities entered into a global settlement on January 31, 2018, which resolved the rate dispute and a number of other issues (the "Settlement Agreement").[5]  Of particular importance to the pending petition, Section 8 of the Settlement Agreement addresses the issue of offsets:

> **Offset.** The Parties agree that reinsurance premium and undisputed claims may be offset on any reinsurance treaty between Protective and SRUS, or on any treaties involving business coinsured with Protective, for balances incurred on or after the Effective Date.[6]

D.    On March 6, 2019, the court entered the Rehabilitation and Injunction Order, placing Scottish Re into Rehabilitation under 18 *Del. C.* §§ 5903 and 5905, appointing the Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, as Receiver for Scottish Re (the "Receiver"), and entering certain injunctive relief under 18 *Del. C.* § 5904.[7]

---

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 3.

[6] Petition, Ex. A ("Settlement Agreement") § 8.  The Settlement Agreement defines the word "Protective" to include all four of the Protective Entities collectively.  *Id.* at 1.

[7] Dkt. 18 ("Rehabilitation and Injunction Order").

E.      On March 25, 2019, the Receiver filed a petition for approval of a plan for addressing contractual offset rights during the rehabilitation proceeding.[8]

F.      On April 16, 2019, the Protective Entities submitted "Asserted Offset Claims" to the Receiver under the Receiver's then-proposed offset plan. The Receiver objected to those "Asserted Offset Claims" because the calculations involved "triangular"[9] or "cross-entity" offsets, *i.e.*, "offsetting premium due by one Protective Entity against the reimbursed claims owed to a different Protective Entity."[10] According to the Receiver, Section 8 of the Settlement Agreement does not authorize this *group* offsetting methodology, but instead requires mutuality such that amounts due to the Receiver by one Protective Entity may only be offset by amounts the Receiver owes that *same* entity. The Receiver acknowledges, however, that Section 8 provided the Protective Entities with a broader right of offset by allowing them to take offsets—albeit individually—relating to the two types of reinsurance they had with Scottish Re, *i.e.*, yearly renewable term reinsurance and coinsurance.[11]

---

[8] Dkt. 42 ("Offset Petition").

[9] "A triangular setoff is a setoff between an affiliate of a contractual party and the counter-contractual party." *In re Orexigen Therapeutics, Inc.*, 596 B.R. 9, 17 (Bankr. D. Del. 2018).

[10] Petition ¶ 11.

[11] Opening Br. 15 (Dkt. 364).

G.     On June 20, 2019, after a hearing and submission of a revised proposed plan, the court approved the Receiver's revised offset plan ("Offset Plan").[12]

H.     On July 10, 2019, the court approved a stipulation by the Receiver and the Protective Entities under which the Receiver agreed to certain offsets but continued to object to the group offsetting methodology.[13]

I.     On August 5, 2019, the Protective Entities filed their initial petition,[14] which they amended on October 28, 2019 (the "Petition"). The Petition was filed under Section III(C)(1) of the Offset Plan, which provides that in the event there is a dispute regarding offsets, "either party may file a petition with the Court for a determination as to the Offset Amount or other appropriate relief."[15] The Petition seeks "an order directing the Receiver to honor valid contractual obligations of Scottish Re . . . by allowing offset or recoupment of premium and claims payments pursuant to . . . [the] Settlement Agreement."[16]

J.     On December 13, 2019, the Receiver filed his motion to dismiss the Petition for failure to state a claim under Court of Chancery Rule 12(b)(6).[17]

---

[12] Dkt. 211 ("Offset Plan").

[13] Dkt. 217.

[14] Dkt. 250.

[15] Offset Plan, Section III(C)(1).

[16] Petition 1.

[17] Dkt. 363; Opening Br. 8-9.

NOW THEREFORE, the court having considered the parties' submissions,

IT IS HEREBY ORDERED, this 19th day of May, 2020, as follows:

1.      The standard governing a motion to dismiss under Court of Chancery

Rule 12(b)(6) for failure to state a claim for relief is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[18]

2.      As the Receiver has acknowledged, "[i]t is commonplace in [Scottish

Re's] business relationships with cedents, retrocessionaires, and third party

administrators to sometimes use offsets as an accounting method or shorthand to

'net' mutual rights and obligations between them."[19]

3.      In March 2019, at the outset of this action, the court entered the

Rehabilitation and Injunction Order, paragraph 12 of which temporarily enjoined

reinsurers and cedents of Scottish Re from exercising their contractual offset rights:

---

[18] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citations omitted).

[19] Offset Petition ¶ 12.

> All persons or entities, including but not limited to reinsurers and cedents, having notice of these proceedings or of the Rehabilitation and Injunction Order are hereby enjoined and restrained from exercising or relying upon any contractual right which would permit such third party or parties from withholding, failing to pay, setting-off, netting, or taking similar action with respect to any obligations owed to [Scottish Re].[20]

4.     Section 5927 of the Delaware Uniform Insurers Liquidation Act ("DUILA"), which governs insurance insolvencies in Delaware, recognizes the use of offsets in a rehabilitation proceeding under limited circumstances. This section provides, in relevant part, that:

---

[20] Rehabilitation and Injunction Order ¶ 12. The Receiver sought entry of the Rehabilitation and Injunction Order under Sections 5904(a) and 5904(b) of the DUILA. Verified Petition for Entry of Rehabilitation and Injunction Order ¶ 47 (Dkt. 1). Those provisions state, in relevant part:

> (a)     Upon application by the Commissioner . . . the court may without notice issue an injunction restraining the insurer, its . . . subscribers, agents and all other persons from the transaction of its business or the . . . disposition of its property until the further order of the court.

> (b)     The court may at any time during a proceeding under this chapter issue such other injunctions or orders as may be deemed necessary to prevent . . . the obtaining of preferences.

In its Verified Petition, the Commissioner averred that this relief was necessary because:

> [D]uring the time period until a viable Plan of Rehabilitation is submitted and approved by the Court, it is important to the success of any such Plan that business relationships between the Company and its creditors, including cedents and retrocessionaires, . . . should be enjoined from exercising or relying upon any contractual right which would permit . . . parties from . . . setting-off, netting, or taking similar action with respect to any obligations owed to [Scottish Re].

Verified Petition ¶ 36.

(a) In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter, such credits and debts shall be set off and the balance only shall be allowed or paid, except as provided in subsection (b) of this section below. . . .[21]

In June 2019, the court approved the Offset Plan, which was designed to provide a process by which the Receiver would review asserted offsets and authorize those that comply with this statutory requirement during the pendency of this proceeding until a viable rehabilitation plan is submitted and approved by the Court.

5.     The Protective Entities argue that the Receiver erred in denying them offsets according to their group offsetting methodology because:  (i) the plain language of the Settlement Agreement authorizes that methodology; (ii) the Settlement Agreement itself creates mutual obligations that satisfy the mutuality requirement of 18 *Del. C.* § 5927; (iii) the Settlement Agreement satisfies the integrated transaction requirement for recoupment; and (iv) the Receiver must permit the Protective Entities to exercise their right of offset because Section 8 of the Settlement Agreement is part of an executory contract that the Receiver is obligated to accept or reject in its entirety.[22]

---

[21] 18 *Del. C.* § 5927(a).

[22] Answering Br. 9, 15, 18, 22 (Dkt. 395).  The Protective Entities also argue that the group offsetting provision in the Settlement Agreement does not create a preference.  *Id.* 17.  The Receiver strenuously disagrees.  *See* Reply Br. 16 ("[A]ll offsets in insurance delinquency proceedings are considered preferential due to the effect of an offset elevating the priority of distribution to such creditor.") (Dkt. 421).  The court does not need to resolve this dispute because the issue relevant here is not whether the group offsetting methodology creates a

6.      For the reasons discussed below, the court does not need to determine whether the Settlement Agreement authorizes the group offsetting methodology advocated by the Protective Entities because even if it did, (i) the methodology is prohibited by 18 *Del. C.* § 5927, which requires mutuality, (ii) the Settlement Agreement does not satisfy the single transaction requirement of recoupment, and (iii) the Receiver does not have an obligation to accept or reject all provisions of the Settlement Agreement at this point in the proceeding.

7.      **Mutuality.**   Both parties agree that the mutuality requirements for offsets must be strictly construed.[23]  In the bankruptcy context, "state and federal courts have found to a fare-thee-well that debts are mutual only when they are due to and from the same persons in the same capacity."[24] Thus, "[m]utuality requires that 'each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally.'"[25]

---

preference *per se*, but whether it (i) satisfies the mutuality requirement of 18 *Del. C.* § 5927 so as to constitute an offset allowable during the pendency of this proceeding and/or (ii) is enforceable under the equitable doctrine of recoupment.  For the reasons discussed below, the group offsetting methodology fails on both counts.  *See infra.* ¶¶ 7-16.

[23] *See* Answering Br. 22 ("The Receiver cites numerous bankruptcy court cases and a few state insurance insolvency decisions to support the uncontroversial position that the right of setoff is narrowly construed.  The Protective Entities do not dispute that assertion.").

[24] *In re Orexigen*, 596 B.R. at 17 (internal quotation marks omitted) (collecting authorities); *see also In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010).

[25] *In re SemCrude*, 399 B.R. at 393 (citing *In re Garden Ridge Corp.*, 338 B.R. 627, 632 (Bankr. D. Del. 2006), *aff'd*, 399 B.R. 135 (D. Del. 2008), *aff'd*, 386 F. App'x 41 (3d Cir.

8

8.      Implicitly conceding that mutuality is lacking under their reinsurance contracts with Scottish Re because the Protective Entities have separate rights and obligations under those contracts, the Protective Entities argue that the Settlement Agreement itself creates the required mutuality under Section 5927 of the DUILA.[26]

9.      For support, the Protective Entities rely on *In re Liquidation of Home Insurance Company*[27] to argue that an offset among affiliates is permissible "where the intent of all the parties to permit such an offset is clear."[28]  *Home Insurance*, however, involved the absolute assignment of one affiliate's rights to a claim to another affiliate.[29]  "For an assignment to be absolute, '[t]he assignor must not retain any control over the fund or property assigned, any authority to collect, or any form of revocation.'"[30]  The court in *Home Insurance* recognized that "[s]uch an assignment 'can create mutuality for setoff purposes,'" explaining that:

> Under principles of contract law, when party A pays B's debt to C and obtains a valid assignment of C's rights against B, party A may now "step into the shoes" of C and assert all rights C had against B.  By way of assignment, there are mutual debts now owing between parties A and B.[31]

2010) (quoting *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987)).

[26] Answering Br. 22.

[27] 953 A.2d 443 (N.H. 2008).

[28] Answering Br. 23.

[29] *Home Ins.*, 953 A.2d at 447.

[30] *Id.* at 448.

[31] *Id.* at 448-49.

Based on its finding that the agreement at issue constituted an absolute assignment, the court in *Home Insurance* determined that the mutuality requirement was satisfied.[32] *Home Insurance* does not aid the Protective Entities because, as they concede, no absolute assignment is present here.[33]

10. The Protective Entities next argue that because "the parties entered into a single agreement for the express purpose of revising their mutual financial obligations under other existing contracts" the Settlement Agreement created "mutual debts and credits among [Scottish Re] and the Protective Entities."[34] The court disagrees.

11. Even assuming *arguendo* that Scottish Re agreed in the Settlement Agreement to allow cross-entity offsets in exchange for Scottish Re's promise to pay increased premiums, the Settlement Agreement would not have created the mutuality necessary to satisfy Section 5927. This is because the Settlement Agreement did not alter the Protective Entities' underlying legal relationships and rights with respect to the amounts owed to and due from Scottish Re relevant to

_____

[32] *Id.* at 449-53.

[33] *See* Answering Br. 23.

[34] *Id.* 23-25.

10

determining mutuality, *i.e.*, each party continued to own its claims in its own right, with the right to collect in its own name against the debtor in its own right.[35]

12. This conclusion accords with the authorities cited above that construe strictly mutuality requirements for offsets. Furthermore, as the Receiver points out, finding that the Settlement Agreement created mutuality essentially would create a "contractual exception" to mutuality and allow the Protective Entities to "receive a greater distribution than other similarly situated creditors, thus diluting the entire estate to the detriment of all other similarly situated creditors."[36] The court declines to endorse this approach, which would contravene the policy underlying Section 5927's mutuality requirement to ensure that similarly situated creditors are treated equally.[37] For the reasons discussed above, the Protective Entities group offsetting

---

[35] *See In re SemCrude*, 399 BR at 393 ("mutuality requires that 'each party must own his claim in in his own right severally, with the right to collect in his own name against the debtor in his own right and severally.'") (quoting *In re Garden Ridge*, 338 B.R. at 632 (quoting *Braniff Airways*, 814 F.2d at 1036)).

[36] Reply Br. 11.

[37] *See In re Orexigen*, 596 B.R. at 21-22 ("[S]ection 553(a) aligns with the fundamental bankruptcy policy of ensuring similarly-situated creditors receive an equal distribution from the debtor's estate. If parties can contract around section 553(a)'s mutuality requirement, a creditor could receive a greater distribution than other equal-footed creditors and thus dilute the entire estate to the detriment of all creditors."); *In re SemCrude, L.P.*, 428 B.R. 590, 594 (D. Del. 2010) ("Construing the generally accepted definition of mutuality narrowly, as it is obliged to do, the Court concludes that mutuality cannot be supplied by a multi-party agreement contemplating a triangular setoff."). Section 553(a) of the bankruptcy code contains a mutuality requirement for offsets similar to Section 5927(a) of the DUILA. *See* 11 U.S.C. § 553(a) ("[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the

methodology is not authorized under Section 5927 of the DUILA because it lacks the requisite mutuality.

13. **Recoupment.** The Protective Entities argue that their contractual offset rights must be enforced under the common law of recoupment.[38] "Recoupment is a common-law, equitable doctrine that permits a defendant to assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff."[39] "[T]o prevail on a recoupment claim, the defendant must show [among other things] that . . . the recoupment claim arises out of the same transaction or occurrence as the plaintiff's suit [and] the claim is purely a defensive set-off and does not seek an affirmative recovery from the plaintiff."[40]

14. "The equitable doctrine of recoupment has been recognized in insurance and other types of insolvency cases" and, "[w]hen the doctrine is recognized," it "generally is not deemed to be subject to the setoff requirement of mutuality."[41] The Protective Entities do not provide any authority recognizing the

---

commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .").

[38] Petition ¶ 19.

[39] *TIFD III-X LLC v. Fruehhauf Prod. Co.*, 883 A.2d 854, 859 (Del. Ch. 2004) (Strine, V.C.) (quoting 80 C.J.S. *Set-off and Counterclaim* § 2 (2000)) (internal quotation marks omitted).

[40] *Id.* (quoting 80 C.J.S. *Set-off and Counterclaim* § 37 (2000)) (internal quotation marks omitted).

[41] RECEIVER'S HANDBOOK FOR INSURANCE COMPANY INSOLVENCIES, 510 (National Association of Insurance Commissioners, 2018).

12

common law right of recoupment in a Delaware insurance insolvency proceeding.[42] The Receiver argues that recoupment is barred under Section 5918 of the DUILA, which provides, in relevant part, that "[n]o claim . . . shall be permitted to circumvent the priority classes through the use of equitable remedies."[43] The court need not address this issue because the elements of recoupment have not been shown here in any event.

15. The Protective Entities assert that the Receiver's primary damage claim (payment of increased premium) and the Protective Affiliates' defensive claim of recoupment (right to cross-entity offsets) are part of the same single integrated transaction (the Settlement Agreement).[44] This analysis, however, fails to recognize that the underlying reinsurance agreements, as amended, are the controlling agreements that give rise to claims for premium payments and claims for the payment of losses. Those agreements, furthermore, involve different Protective Entities, depending on the specific reinsurance agreement at issue.

16. In short, the Settlement Agreement does not satisfy the single integrated transaction requirement of recoupment because each individual treaty is a separate transaction which gives rise to the underlying obligations of premium payments

---

[42] *Cf. TIFD*, 883 A.2d 854 (dissolution of limited partnership).

[43] 18 *Del. C.* § 5918(e).

[44] *See* Answering Br. 20.

owed and claim payments due. The Settlement Agreement did not amend these underlying treaties; it simply created an overlay of additional contractual obligations.

17. **Executory Contract.**[45] Finally, the Protective Entities assert the Receiver must allow them to take cross-entity offsets under Section 8 of the Settlement Agreement because that provision is part of an executory contract for which the Receiver is obligated to accept or reject all provisions.[46]

18. The Receiver counters that the Protective Entities are misconstruing "the Receiver's authority and seek to accelerate the timing of the Receiver's decision whether to assume or reject the Settlement Agreement."[47] The court agrees.

19. The issue before the court is not whether the Receiver has assumed or rejected the Settlement Agreement as part of the Receiver's plan to emerge from rehabilitation. Rather, the court must determine whether a particular contract provision is enforceable *during* a rehabilitation proceeding and before the Receiver has provided a plan to emerge from rehabilitation. During this time period, whether or not a contract provision is enforceable depends on compliance with the court's

---

[45] For purposes of this motion, the court assumes without deciding that the Settlement Agreement is an executory contract. The Receiver made a similar assumption in opposing the Petition. *See* Opening Br. 32 n.23.

[46] Answering Br. 15-16.

[47] Reply Br. 19.

14

orders and the DUILA.[48]   As explained above, under the Protective Entities' interpretation, the offset provision does not comply with either, and thus is unenforceable during the course of these proceedings.

20.   A contractual provision may not be enforceable in a rehabilitation proceeding even if it is lawful outside of rehabilitation.[49]   Indeed, nonenforcement in a rehabilitation proceeding under the DUILA does not modify the contract for purposes of assumption or rejection pursuant to a plan.[50]   Additionally, as the Receiver acknowledges, nonenforcement at this juncture does not eliminate the underlying general unsecured claim that the Protective Entities may assert in connection with a plan of rehabilitation or a plan of liquidation.[51]

\* \* \* \* \*

---

[48] As discussed above, paragraph 12 of the Rehabilitation and Injunction Order temporarily enjoined reinsurers and cedents of Scottish Re from exercising their contractual offset rights in accordance with 18 *Del. C.* § 5904.  This provision was modified by the Offset Plan, which provides a process by which the Receiver reviews asserted offsets and authorizes those that comply with Section 5927's mutuality requirement during the pendency of this proceeding.

[49] *See supra* note 20.

[50] Should a plan include acceptance of the Settlement Agreement, the parties may then need to resolve their dispute regarding the proper interpretation of Section 8.

[51] Reply Br. 3.

21.    For the reasons explained above, the Petition fails to state a claim upon which relief can be granted.  Accordingly, the Receiver's motion to dismiss the Petition is **GRANTED**.


                                        */s/ Andre G. Bouchard*
                                        Chancellor