NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2012-623


IN THE MATTER OF THE LIQUIDATION OF
THE HOME INSURANCE COMPANY

Argued:  October 16, 2013
Opinion Issued:  February 13, 2014


Orr & Reno, P.A., of Concord (Lisa Snow Wade on the brief and orally), and Crowell & Moring LLP, of New York, New York, and Washington, D.C. (Harry P. Cohen and Ellen M. Farrell on the brief), for the appellant.

Michael A. Delaney, attorney general (J. Christopher Marshall, attorney, on the brief), and Rackemann, Sawyer & Brewster P.C., of Boston, Massachusetts (J. David Leslie and Eric A. Smith on the brief, and Mr. Leslie orally), for the respondent.

LYNN, J.  The appellant, Century Indemnity Company (CIC), appeals an order of the Superior Court (Smukler, J.) granting the motion of the respondent, Roger A. Sevigny, Commissioner of Insurance of the State of New Hampshire, as Liquidator (the Liquidator) of the Home Insurance Company (Home) for an award of statutory prejudgment interest on certain monies owed to Home by CIC.  We affirm.

I

This is the fifth opinion we have issued in connection with the liquidation of Home.  See In the Matter of Liquidation of Home Ins. Co., 154 N.H. 472 (2006) (Home I); In the Matter of Liquidation of Home Ins. Co., 157 N.H. 543 (2008) (Home II); In the Matter of Liquidation of Home Ins. Co., 158 N.H. 396 (2009) (Home III); In the Matter of Liquidation of Home Ins. Co., 158 N.H. 677 (2009) (Home IV).  The following facts either are drawn from our prior opinions or are supported by the record in the instant appeal.

Home is an insurance company, organized under the laws of New Hampshire, which was declared insolvent and placed in liquidation in 2003.  Home II, 157 N.H. at 544.  The Liquidator is vested with title to and charged with administering and collecting Home's assets for distribution to Home's creditors.  Home I, 154 N.H. at 475.  CIC is an insurance company organized under the laws of Pennsylvania.  Home II, 157 N.H. at 544-45.  CIC and Home have a set of co-insurance and reinsurance relationships, which are fully described in our opinions in Home II and Home IV.  See Home IV, 158 N.H. at 679-80; Home II, 157 N.H. at 544-46.  In one aspect of the parties' relationship, CIC reinsures Home with respect to certain contracts between Home and other insurers.  Home II, 157 N.H. at 545.  CIC and Home are also co-insurers of certain companies, including Pacific Energy Company (PECO), meaning that both CIC and Home are primary insurers of PECO.  Home IV, 158 N.H. at 680.

A number of documents govern aspects of the relationship between CIC and Home, and we deal with three here.  The first, the Restated and Revised Order Establishing Procedures Regarding Claims Filed with the Home Insurance Company in Liquidation (Claims Procedures Order) applies generally to claims made against Home pursuant to the Insurers Rehabilitation and Liquidation Act, RSA chapter 402-C (2006 & Supp. 2013); its purpose is to achieve uniformity and provide procedures for the presentation, processing, determination, and classification of claims against Home.  It became effective on January 19, 2005, and is a restated and revised version of an order originally entered in the Home liquidation on December 19, 2003.  It applies to all "Claimants" in the Home liquidation, defining that term as "any policyholder, reinsured, reinsurer, general creditor, third-party, or guaranty association that has filed a Proof of Claim."  The second document, the "Claims Protocol," is a letter agreement between CIC and Home that governs the handling by CIC, as reinsurer of Home, of a certain subset of claims against Home (the AFIA Liabilities) by certain entities in the United Kingdom (the AFIA Cedents) in connection with the American Foreign Insurance Association.  See Home I, 154 N.H. at 474-75 (explaining the reinsurance relationship between CIC and Home with respect to the AFIA Liabilities).  Of particular relevance here, Section 3 of the Claims Protocol provides that CIC shall make certain remittances to Home with respect to the AFIA Liabilities net of setoff as

permitted by New Hampshire law, and will provide monthly reports as to those remittances and setoffs. The third document, the Joint Report, is another agreement between CIC and Home, and addresses contribution/subrogation claims filed by CIC in the Home liquidation under four particular Proofs of Claim. It sets forth the initial steps to be taken by the two parties after CIC asserts such a claim, including CIC's asserted PECO claim.

This appeal flows directly from the facts at issue in Home IV. In that appeal, we held that an asserted $8 million setoff claim by CIC, which had been waived and then reacquired by CIC in a pair of settlement agreements with PECO, was impermissible under New Hampshire law. Id. at 680, 684. We also explicitly declined, without prejudice, to decide the issue now before us: whether Home's estate was entitled to prejudgment interest on the payments CIC wrongfully withheld based upon setoff. Id. at 684.

We denied CIC's motion for reconsideration in the Home IV appeal on June 10, 2009. After remand, the Liquidator filed a motion in superior court on June 29, 2009, for interest on amounts withheld by CIC based upon improper setoff, to which CIC objected on July 14, 2009. On August 3, 2009, CIC removed the PECO setoff from its monthly statement to Home and paid the previously withheld $8 million to the Liquidator. The trial court entered an order granting the motion on August 3, 2012, finding that Home was entitled to prejudgment statutory interest under RSA 524:1-a (2007) accruing from October 12, 2007, the date of the Liquidator's letter notifying CIC of his determination to disallow the PECO setoff. This appeal followed.

II

On appeal, CIC argues that the trial court erred in granting Home prejudgment interest pursuant to RSA 524:1-a, and that, in the alternative, it erred in determining the correct accrual date. We disagree with both arguments.

This appeal requires us to interpret statutes as well as the contracts between the parties. "The interpretation of a statute is a question of law, which we review de novo." Home IV, 158 N.H. at 681. "We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." Id. "We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used." Id. "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." Id.

"The interpretation of a contract is a question of law, which we review de novo." Home II, 157 N.H. at 546. "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the

circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Id. "Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract." Id.

CIC first asserts that the trial court erred in granting the Liquidator's motion for interest. It makes two arguments as to why RSA 524:1-a should not apply: (1) this was not an "action on a debt or account stated" as required by the statute; and (2) the agreements between CIC and Home create a comprehensive protocol that does not allow for an award of interest on a disputed setoff claim.

CIC first argues that the underlying proceeding was not an "action on a debt or account stated," and thus RSA 524:1-a does not apply. In its order, the trial court found that "there is a distinction between an action for setoff and an action on a debt or account," and CIC argues that the trial court erred when it found that "the nature of this case is not one for setoff," but is "more akin to a debt claim or contract dispute."

Here, the trial court granted the Liquidator's motion based upon RSA 524:1-a. We have previously indicated that "legislative history suggests that RSA 524:1-a and :1-b were intended to provide the same protection to prevailing parties." Nault v. N & L Dev. Co., 146 N.H. 35, 39 (2001). All statutes dealing with the same subject-matter are to be considered in interpreting any one of them. Id. at 38. "Where reasonably possible, statutes should be construed as consistent with each other." Id. "When interpreting two statutes which deal with a similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." Id.

"Ordinarily, upon a verdict for damages and upon motion of a party, interest is to be awarded as a part of all judgments." State v. Peter Salvucci Inc., 111 N.H. 259, 262 (1971). RSA 524:1-a provides: "In the absence of a demand prior to the institution of suit, in any action on a debt or account stated or where liquidated damages are sought, interest shall commence to run from the time of the institution of suit." RSA 524:1-a. RSA 524:1-b further provides:

> In all other civil proceedings at law or in equity in which a verdict is rendered or a finding is made for pecuniary damages to any party, whether for personal injuries, for wrongful death, for consequential damages, for damage to property, business or reputation, for any other type of loss for which damages are recognized, there shall be added . . . to the amount of damages

4

interest thereon from the date of the writ or the filing of the
petition to the date of judgment . . . .

RSA 524:1-b (2007).

The purpose of the legislature in enacting RSA 524:1-a and :1-b in 1957 was "to clarify and simplify the existing law and to make plain that in all cases where the trial court awarded money to the party entitled to be compensated, interest at the legal rate is to be added to the award." N.H.S. Jour. 478-79 (1963) (statement of Sen. Samuel Green). Indeed, the legislature amended RSA 524:1-b in 1963 in response to our holding in Chagnon v. Union-Leader Co., 104 N.H. 472 (1963), in which we held that certain kinds of libel actions did not entitle parties to prejudgment interest under the statute. See Hanchett v. Brezner Tanning Co., 107 N.H. 236, 241 (1966); N.H.S. Jour. 479-80 (1963). In doing so, it made clear its intent that prejudgment interest be awarded in such cases. See Hanchett, 107 N.H. at 241; N.H.S. Jour. 479-80 (1963).

The functional difference, then, between sections 1-a and 1-b is that they apply to different kinds of judgments. Section 1-a applies to actions "on a debt or account stated or where liquidated damages are sought." Section 1-b refers back to section 1-a, providing that it applies to "all other civil proceedings at law or in equity in which a verdict is rendered or a finding is made for pecuniary damages to any party," whether for one of the listed categories of damages or for "any other type of loss for which damages are recognized." Stated more simply, section 1-a applies to certain actions for payment of a fixed sum, whereas section 1-b applies to all other actions for damages.

Additional clauses in each statute support this distinction. Section 1-a contains a clause making its provisions "inapplicable where the party to be charged pays the money into court." Such a mechanism could only be sensibly applied where the amount at issue is a liquidated sum. Section 1-b permits the addition of interest even if such interest would bring the judgment amount beyond the maximum liability imposed by law, a concern arising mainly in actions in which the amount of damages to be awarded is uncertain at the start of the case.

Thus, the import of the language "any action on a debt or account stated or where liquidated damages are sought" in section 1-a is that the statute applies in actions for a fixed sum. Returning to CIC's argument, we find no meaningful distinction between an action on this disputed setoff and an "action on a debt or account stated" under RSA 524:1-a. In this case, the dispute was whether CIC could withhold payment of a fixed debt of $8 million under a claimed setoff. Here, the procedural posture of the case as that of a disputed claim in the Home liquidation, rather than a lawsuit to collect on a debt, is of no consequence in terms of the interest statute.

5

CIC cites two cases distinguishing between setoff and an action on a debt. See Koken v. Legion Ins. Co., 900 A.2d 418, 429 (Pa. Commw. Ct. 2006) ("Setoff is not an action, and an action on a debt is not the equivalent of setoff."); Long Beach Trust Co. v. Warshaw, 190 N.E. 659, 660 (N.Y. 1934) ("[T]he right to sue on a debt and the right to use the debt as an offset are not equivalent."). However, these cases made that distinction in a context that is inapposite to the question at issue here. Both Koken and Long Beach Trust involved the construction of statutes that would have precluded the bringing of an "action" — in both cases, a counterclaim — but would not have precluded the assertion of a setoff. See Koken, 900 A.2d at 429 (holding that allowing bank to assert quasi-contract claim as setoff would violate state's insurance insolvency law); Long Beach Trust, 190 N.E. at 660 (holding that defendant could assert setoff where failure to file a claim pursuant to Banking Law statute barred counterclaim). For the purposes of our interest statute, we find no significance in this distinction, and hold that RSA 524:1-a applies in this case.

We turn next to CIC's second argument, that the agreements between the parties were "comprehensive" and did not provide for interest on disputed setoffs. The parties agree that their agreements are silent as to the issue of interest. However, the parties disagree on how to interpret that silence. CIC asserts that the agreements form a "comprehensive" protocol between the parties and that the absence of language addressing interest demonstrates the parties' intent that interest not be awarded on a disallowed setoff. Thus, according to CIC, the trial court impermissibly rewrote the parties' agreements by imposing prejudgment interest under RSA 524:1-a. We disagree.

"The laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." Stankiewicz v. City of Manchester, 156 N.H. 587, 590 (2007) (quotation omitted). To be sure, where the parties' contract includes a provision for interest, we have applied it, our interest statutes notwithstanding. See Tulley v. Sheldon, 159 N.H. 269, 274 (2009) (holding that plaintiffs were entitled to contractual 1.5% prejudgment interest rate rather than statutory rate); Lassonde v. Stanton, 157 N.H. 582, 594 (2008) (holding that plaintiffs were entitled to at least 15% statutory interest where contract provided for 15-18% finance charge per annum on unpaid balances); Mast Rd. Grain & Bldg. Mat's Co. v. Piet, 126 N.H. 194, 197 (1985) (interpreting contractual clause providing for debtor to pay "all accrued finance charges to date" as providing that 24% finance charge applied only up to date of demand, after which statutory interest rate applied under RSA 524:1-a).

But these cases do not support the proposition that where an agreement is silent as to interest, no interest accrues. To the contrary, that is exactly the

6

circumstance where the default rule established by RSA 524:1-a applies most clearly.  John A. Cookson Co. v. N.H. Ball Bearings, 147 N.H. 352, 361-62 (2001) (holding that arbitrator could include interest in award where parties' arbitration agreement was silent on issue of interest); Albee v. Wolfeboro Railroad Co., 126 N.H. 176, 181 (1985) (holding that statutory interest rate applied on amount owed after terms of interest called for by note had expired).  The very purpose of adding interest to an award or judgment, including under RSA 524:1-a and :1-b, is to recognize the time value of money by compensating a creditor for the delay between when money is due and when it is paid.  See John A. Cookson Co., 147 N.H at 362 (stating that "money has a 'use value'" and that interest as a component of damages compensates the prevailing party for lost use of its money).  Thus, unless an agreement specifically provides to the contrary, RSA 524:1-a applies.

Here, the parties entered into two agreements, the Joint Report and the Claims Protocol, and abided by a third applicable document, the Claims Procedure Order.  None of these documents provides for a different interest rate on disputed amounts than the statutory rate.  Further, nothing in the agreements supports CIC's claim that the agreements, as a whole, are "comprehensive" in nature.  To the contrary, the agreements between CIC and Home demonstrate the parties' intent to reserve their rights as to matters not addressed.  For example, Paragraph 3.3 of the Claims Protocol contains two reservations of rights: the first in which the Liquidator "fully reserve[d] all rights in relation to any offset asserted"; and the second in which CIC reserved its rights "in respect of any payments made, including as to amount and as to the obligation of CIC to make the same."  Paragraph 7 of the Joint Report further provides that "CIC and the Liquidator reserve all rights as against each other."  In addition, the Joint Report provides that with respect to any fully or partially disallowed claim, the parties will jointly seek an order from the Referee that the matter be deemed a disputed claim proceeding and "treated as such under the RSA and the Claims Procedures Order" (emphasis added), showing a clear intent that New Hampshire statutory law be applied where the agreements are silent.

To interpret the parties' silence on the issue of interest as evincing an intent that there be none would require us to write into the contract a term that the parties did not include.  Had the parties intended that the interest statute not apply, they could have included a clause in one of the agreements stating as much.  By the plain meaning of the language used in the agreements, then, CIC's argument that they are "comprehensive" fails.

III

In its alternative argument, CIC claims that the trial court erred in ruling that prejudgment interest should accrue from the date of the Liquidator's

October 12, 2007 letter. CIC claims that: (1) the October 12, 2007 letter did not constitute a "demand" under RSA 524:1-a; and (2) under the Claims Protocol, CIC was not obligated to pay Home until the resolution of the proceedings related to the PECO setoff. We again disagree.

Pursuant to Paragraph 3.3 of the Claims Protocol, CIC first asserted the PECO setoff in its July 2007 statement, which was sent to the Liquidator on August 29, 2007. CIC withheld $8 million of payments in its remittances under its July, August, and September 2007 statements based upon the PECO setoff. On October 12, 2007, pursuant to the Joint Report, the Liquidator advised CIC of his determination to disallow CIC's asserted PECO setoff and that he was prepared to jointly request that the Referee deem the asserted PECO setoff a disputed claim proceeding. The parties submitted this request to the Referee on October 18, 2007.

CIC first argues that the Liquidator's October 12, 2007 letter could not be a demand pursuant to RSA 524:1-a because the letter makes no request for interest. "It is undisputed that under RSA 524:1-a, interest shall accrue from the earlier of either the demand for payment or the institution of suit." Lago & Sons Dairy, Inc. v. H.P. Hood, Inc., 892 F. Supp. 325, 346-47 (D.N.H. 1995). Under the statute, the "demand" need be for payment, not for interest as CIC suggests. See J & M Lumber and Const. Co. v. Smyjunas, 161 N.H. 714, 729 (2011) (analyzing whether interest ran from date plaintiff initiated lawsuit or date of alleged "demand for payment"); Lipski v. Polonsky, 122 N.H. 528, 530 (1982) (holding that interest accrued from date of demand of repayment on promissory note).

Turning to the Liquidator's October 12, 2007 letter, the unredacted portions that are in the record do not explicitly demand payment. They do inform CIC that the Liquidator was disallowing the PECO claim and was prepared to jointly seek an order from the Referee deeming the claimed setoff a disputed claim proceeding. However, the import of disallowing the asserted PECO claim was that the Liquidator would seek to recover the monies so withheld, the equivalent of a demand for payment. We thus hold that the October 12, 2007 letter constitutes a "demand" under RSA 524:1-a, and that the trial court correctly determined that interest should accrue from this date.

CIC argues further that, under Paragraph 3.3 of the Claims Protocol, it was not obligated to pay Home until the resolution of the proceedings related to the PECO setoff. In full, Paragraph 3.3 states:

> Within thirty (30) business days after the end of each month, CIC shall (a) provide [Home] with a statement showing (i) all amounts payable by CIC to [Home] pursuant to [certain paragraphs of the Claims Protocol] for the preceding month; (ii) the amount of funds

paid by CIC with respect to such payables; and (iii) any amounts claimed in offset in accordance with paragraph 3.4 against amounts due to [Home], together with sufficient detail and an explanation as to the basis for the asserted offset; and (b) subject to the proviso to this paragraph, effect a wire transfer to such account as may, from time to time, be designated by the Liquidator for the balance. CIC agrees and acknowledges that the Liquidator fully reserves all rights in relation to any offset asserted. CIC reserves (and the Liquidator acknowledges that CIC so reserves) all rights in respect of any payments made, including as to amount and as to the obligation of CIC to make the same; PROVIDED THAT, where the Claimant has submitted a request for Review or an Objection in respect of a Claim disputing the quantum of the Claim or elements of it, CIC shall make remittance in respect of any portions of the Claim allowed in full or agreed between CIC and the Claimant. CIC shall not be obliged to make remittance in respect of the disputed amount unless and until the relevant proceedings settle the disputed amount or it is negotiated and agreed between the claimant and CIC with the concurrence of the Liquidator, in which event remittance will be made in such amount within thirty (30) business days after the month next following such settlement or agreement.

CIC relies on the second sentence of the proviso to Section 3.3, claiming that it has no obligation to remit payment on a disputed claim "unless and until the relevant proceedings settle the disputed amount or it is negotiated and agreed between the claimant and CIC with the concurrence of the Liquidator." Thus, CIC claims its obligation to remit payment of the monies withheld pursuant to the disputed PECO setoff was not triggered until we denied CIC's motion for reconsideration on June 10, 2009, and payment was therefore not due until July 30, 2009, "thirty . . . business days after the month next following such settlement or agreement." As a result, CIC contends that interest could not begin to accrue until then, four days before it paid the $8 million to Home on August 3, 2009.

The Liquidator counters, and we agree, that CIC fails to read the Claims Protocol in context. "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Home II, 157 N.H. at 546 (emphasis added) (quotation omitted). CIC's strained construction of a single sentence ignores other language in Section 3.3 as well as the other sections of the Claims Protocol that make it clear that the proviso does not apply in this case.

9

The Claims Protocol defines the terms "Claimant" and "Claim," and incorporates the definitions of "Request for Review" and "Objection" provided in the Claims Procedures Order by reference, as these terms are used in the first sentence of the proviso to Section 3.3. "Claim" is defined as "an inward reinsurance claim against [Home] in respect of an AFIA Liability presented in" a proof of claim filed in the Home liquidation, where "AFIA Liability" is defined in a separate agreement. A "Claimant" is "a person submitting a Claim in the [Home] liquidation." "Request for Review" is defined as a request by a Claimant "that the Liquidator reconsider a Notice of Determination." And finally, the Claims Procedures Order provides that an "Objection" to a Notice of Determination may be filed with the Superior Court for Merrimack County. Applying these definitions in Section 3.3, we conclude that this section defines CIC's payment obligations when the Liquidator challenges an inward insurance claim filed by an AFIA Cedent, not a claim by CIC itself. That is clearly not the situation at hand, in which the claim at issue was filed <u>by</u> CIC under one of its own proofs of claim as a co-insurer with Home, rather than by an AFIA Cedent as to an AFIA Liability under which CIC is a reinsurer of Home. Because we reject CIC's reading of the proviso to Section 3.3, its argument fails.

In sum, we affirm the trial court judgment as to both its granting of the Liquidator's motion and the date from which prejudgment interest accrued. Because of our holding, we need not reach the Liquidator's unjust enrichment claim.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, J., concurred.