NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2014-458

KINGSTON PLACE, LLC

v.

NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION

Argued: April 22, 2015
Opinion Issued: May 22, 2015

Stephan T. Nix, of Gilford, by brief, and Paul M. Monzione, of Wolfeboro, orally, for the petitioner.

Joseph A. Foster, attorney general (Rebecca L. Woodard, assistant attorney general, on the memorandum of law and orally), for the respondent.

DALIANIS, C.J. The petitioner, Kingston Place, LLC, appeals an order of the Superior Court (McHugh, J.) granting summary judgment to the respondent, the New Hampshire Department of Transportation (DOT), on the petitioner's claims that DOT's long delay in taking a portion of the subject property by eminent domain has created a cloud on the petitioner's title, violated RSA 498-A:4, III(a) (2010) and RSA 230:17 (2009), and constituted a taking by inverse condemnation. We affirm.

The record establishes, or the petitioner alleges, the following facts. In September 2007, the petitioner purchased a 3.26-acre lot in Kingston, on which the petitioner operates a commercial business. In November 2004, nearly three years before the petitioner bought the property, DOT held a public hearing regarding the proposed layout of a limited access highway, the plans for which included a drainage easement on the subject property. See RSA 230:45 (2009). According to the petitioner, the proposed easement "significantly impacts the ability of the existing structure on the Property to be expanded and precludes th[e] ability to construct an additional building." The petitioner also alleges that the proposed easement precludes the petitioner "from effectively operating its business on the Property" because the portion of the property on which the drainage easement is proposed to be located "is essential to the Petitioner['s] . . . operation of its business."

In June 2005, a special committee appointed by the Governor and Executive Council, based upon the November 2004 plans, voted that there was an occasion to lay out the proposed limited access highway. See id. The petitioner, however, has never received an offer from DOT to compensate it for the value of the drainage easement. The project, of which the drainage easement is a part, apparently will not be funded until 2017.

In December 2012, the petitioner brought the instant action seeking, among other things, a declaration that the layout of the limited access highway "is null and void" and damages for inverse condemnation. DOT moved for summary judgment, which the trial court granted, and this appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. Phaneuf Funeral Home v. Little Giant Pump Co., 163 N.H. 727, 730 (2012). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

On appeal, the petitioner first argues that DOT's failure to offer the value of the proposed drainage easement within a reasonable time from the June 2005 vote violates RSA 498-A:4, III(a). To address this argument, we must engage in statutory interpretation. The construction of a statute presents a question of law, which we review de novo. See In the Matter of Liquidation of Home Ins. Co., 166 N.H. 84, 88 (2014). We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. We first examine the language of the statute, and, wherever possible, ascribe the plain and ordinary meanings to the words used. Id. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. Id.

2

RSA 498-A:4, III(a) is part of the Eminent Domain Procedure Act, see RSA ch. 498-A (2010), which "provide[s] a complete and exclusive procedure to govern all condemnations of property for public uses." RSA 498-A:1, I. The first step in the condemnation process occurs when "the governmental entity, with the statutory authority to condemn, votes to acquire property." RSA 498-A:4, III(a). "[W]ithin a reasonable time" after this takes place, the condemnor must provide notice of its offer to purchase the property to the condemnee. Id.

The petitioner argues that the June 2005 vote by the special committee is the equivalent of a vote to acquire a portion of the subject property. Accordingly, the petitioner reasons, RSA 498-A:4, III(a) required DOT to provide notice of its offer to purchase within a "reasonable time" after the June 2005 vote. The petitioner contends that because DOT failed to do so, the proposed layout of the limited access highway is void.

In addition to arguing that the June 2005 vote was not a vote to acquire a portion of the subject property, DOT contends that the declaratory relief that the petitioner seeks – a declaration that the proposed layout of the limited access highway is void – is unavailable because the provisions of RSA chapter 498-A "provide[ ] the exclusive remedies." To address the petitioner's arguments, we assume, without deciding, that the declaratory relief sought is available. However, we agree with DOT that the June 2005 vote of the special committee did not constitute a vote to acquire a portion of the subject property.

The petitioner misconstrues the process for laying out a limited access highway. There are two steps in that process. See RSA 230:45. In the first step, "a special committee of 3 persons appointed by the governor and council" decides "whether there is occasion for the laying out . . . of a limited access facility including service roads as proposed by the commissioner of [DOT]." Id. (emphasis added). If the special committee votes that there is an occasion to lay out the proposed limited access highway, then the second step of the process occurs. See id. In the second step, "a commission of 3 persons," appointed by the Governor with the advice of council, "lay[s] out the remainder of such facility [or] service road[ ]," and "may acquire private . . . property . . . by . . . condemnation in the same manner as provided for acquiring property for class I highways." Id. (emphasis added). Accordingly, it is not until the second step of the process that there is a vote as to whether to acquire private property – that is, whether to initiate the eminent domain process.

Here, the June 2005 vote constitutes only the first step in the laying out process. This vote was merely a vote by a "special committee" that there is an occasion to lay out the proposed limited access highway. It was not a vote by a "commission" to acquire property to accomplish that purpose. Thus, contrary to the petitioner's assertions, the June 2005 vote did not initiate condemnation proceedings. Accordingly, the provisions of RSA 498-A:4, III(a) do not apply to the June 2005 vote.

3

The petitioner's argument that DOT violated RSA 230:17 fails for similar reasons. Pursuant to RSA 230:17, once there is a vote to acquire private property as part of the laying out process, either the Governor "with the advice of . . . council, or the commission appointed by the governor with advice of . . . council," must provide notice and "a description of the proposed location . . . to each owner of land or other property over which [a limited access highway] may pass." See RSA 230:45. RSA 230:17 does not apply to the instant matter because the June 2005 vote was not a vote of a "commission" to acquire private property.

The petitioner next contends that DOT's delay in initiating or proceeding with the condemnation process constitutes a taking by inverse condemnation. We disagree.

Whether DOT's actions are sufficient to constitute a taking is a question of law that we review de novo. See J.K.S. Realty v. City of Nashua, 164 N.H. 228, 233 (2012). "Inverse condemnation occurs when a governmental body takes property in fact but does not formally exercise the power of eminent domain." Id. at 234. "Governmental action which substantially interferes with, or deprives a person of, the use of his property in whole or in part, may constitute a taking, even if the land itself is not taken." Id. (quotation and ellipsis omitted). However, to constitute a taking, "[t]he interference must be more than mere inconvenience or annoyance." Id. (quotation omitted). Moreover, "damages arising from protracted [governmental] delay alone are not compensable and mere plotting and planning do not, without more, amount to an invasion of property or deprive the owner of the use and enjoyment of the property." Id. at 235-36 (quotation and ellipsis omitted); see Colorado Springs v. Andersen Mahon Ent., 260 P.3d 29, 33 (Colo. App. 2010) (explaining that "mere plotting and planning by a governmental body in anticipation of the taking of land for public use, and preliminary steps taken to accomplish this, does not, in itself, constitute a taking"); cf. Kirby Forest Industries, Inc. v. United States, 467 U.S. 1, 15 (1984) (concluding that, although it was "certainly possible . . . that the initiation of condemnation proceedings, publicized by the filing of a notice of lis pendens, reduced the price that the land would have fetched, . . . impairment of the market value of real property incident to otherwise legitimate government action ordinarily does not result in a taking").

Here, any delay between the June 2005 vote of the special committee and a vote by a special commission to initiate eminent domain proceedings to acquire a portion of the subject property does not, as a matter of law, constitute a taking. Such delay, alone, does not amount to "an invasion of property or deprive the owner of use and enjoyment of property." J.K.S. Realty, 164 N.H. at 236 (quotation omitted). Although the petitioner argues that what occurred here was not merely "plotting and planning," its argument proceeds

4

from the mistaken assumption that the June 2005 vote initiated eminent domain proceedings.  As previously discussed, the June 2005 vote did not do so.

We have reviewed the remainder of the petitioner's arguments and conclude that they do not warrant further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).  Any argument that the petitioner raised in its notice of appeal, but did not brief, is deemed waived.  In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.