# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0569, In the Matter of Liquidation of The Home Insurance Company, the court on October 27, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. Roger A. Sevigny, Commissioner of Insurance of the State of New Hampshire, as Liquidator (the Liquidator) of The Home Insurance Company (Home), appeals the determination of the Superior Court (Nicolosi, J.) that the Liquidator is not authorized to deduct legal expenses incurred by the California Insurance Guarantee Association (CIGA) in defending a suit brought by the Western Asbestos Settlement Trust (Western Trust), under Home insurance policies. We reverse.

The relevant facts follow. Home is an insurance company, organized under the laws of New Hampshire, which was declared insolvent and placed in liquidation in 2003. In the Matter of Liquidation of Home Ins. Co., 166 N.H. 84, 86 (2014). The Liquidator is vested with title to, and charged with administering and collecting, Home's assets for distribution to Home's creditors. Id.

Western Trust was created in 2004 as a result of a bankruptcy reorganization of Western Asbestos Company, Western MacArthur Company and MacArthur Company (the Western Companies). As part of that reorganization, Western Trust holds the Western Companies' rights and responsibilities under numerous Home insurance policies. Western Trust exists solely to compensate asbestos-related victims of the Western Companies and is funded by the proceeds from the Western Companies' insurance settlements.

CIGA is a statutory entity that was created "to establish a fund from which insureds could obtain financial and legal assistance in the event their insurers became insolvent." Isaacson v. California Ins. Guar. Ass'n, 750 P.2d 297, 303 (Cal. 1988). "All insurers transacting insurance business in California are involuntary members of CIGA, unless specifically exempted by statute." Id. "The statutory purpose of CIGA is to provide for each insurer member insolvency insurance to pay the claims arising out of policies issued by an insurer who becomes insolvent." Id. at 304 (quotation and brackets omitted).

After Home was placed in liquidation, Western Trust claimed entitlement to approximately $1 billion under Home policies issued to the Western Companies. In February 2011, the Liquidator entered into a Settlement Agreement and Mutual Release (Settlement Agreement) with Western Trust. The Settlement Agreement provided for a "Recommended Amount" of $242,500,000 to be allowed as a Class II priority claim of Western Trust in the Home liquidation. See RSA 402-C:44, II (2006). In May 2011, the trial court approved the Settlement Agreement.

In February 2013, Western Trust sued CIGA in California, seeking a declaration that Western Trust "is entitled to obtain payments from [CIGA] for asbestos bodily injury liabilities . . . that are covered" by the Home policies (the so-called Snyder action). The Snyder action is pending and Western Trust and CIGA have agreed upon a phased litigation.

The Liquidator determined that, pursuant to the Settlement Agreement, CIGA's legal expenses incurred in defending the Snyder action are expenses that CIGA is entitled to recover in the Home liquidation and are, therefore, properly deducted from the Recommended Amount. Western Trust objected and moved for an order "disallowing CIGA's Expenses and/or directing the Liquidator to pay the Western Trust's Allowed Claim without any reduction for CIGA's Expenses." Following a hearing, the trial court ruled that the Liquidator is not entitled under the Settlement Agreement to deduct CIGA's legal expenses incurred in defending the Snyder action from the Recommended Amount. This appeal followed.

Resolving this appeal requires us to interpret the Settlement Agreement between the parties. Our review of the Settlement Agreement is de novo "because the proper interpretation of a written agreement is ultimately a question of law for this court." Signal Aviation Servs. v. City of Lebanon, 169 N.H. 162, 166 (2016) (quotation and brackets omitted). Our standards regarding contract interpretation are well-established.

> It is axiomatic that we give an agreement the meaning intended by the parties when they wrote it. When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and context in which the agreement was negotiated, when reading the document as a whole. Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used. Only when the parties reasonably disagree as to its meaning will the agreement's language be deemed ambiguous.

Id. (quotation omitted).

The dispute between the parties centers around Paragraph 9B(1) of the Settlement Agreement, titled "Resolution of Matters and Indemnification," which states:

> [Western Trust] acknowledge[s] that, in the event [it] pursue[s] any claim under the Policies against any Insurance Guaranty Association, the Insurance Guaranty Association's expenses of addressing the claim and any recovery may become a claim by the Insurance Guaranty Association in the Home liquidation. [Western Trust] agree[s] that any judgments, settlements, or other recoveries by [Western Trust] from any Insurance Guaranty Association with respect to the Policies ("Recovery" or "Recoveries") and the Insurance Guaranty Association's Policies-related expenses incurred after the Effective Date of this Agreement ("Expenses") shall be deducted from the Recommended Amount. In the event of such Expenses or Recovery, the amount allowed as a Class II claim in the Home liquidation shall be the Recommended Amount minus both (i) the Expenses, and (ii) any Recoveries.

(Underlining omitted.)

The Liquidator argues that Paragraph 9B(1) "expressly provides for CIGA's expenses to be deducted from the Recommended Amount." The Liquidator asserts that the first sentence of Paragraph 9B(1) "acknowledges the existence of a problem: the Western Trust's . . . pursuit of a guaranty association may result in additional liability and expenses for the Home estate." According to the Liquidator, the second sentence of Paragraph 9B(1) addresses that problem "by providing for the deduction of any recovery and the guaranty association's expenses from the Recommended Amount." The third sentence, the Liquidator contends, "states the consequence of the deduction."

Western Trust counters that "[e]ven if the first sentence of Paragraph 9B(1) of the [Settlement] Agreement did control the scope of the authorized deductions to the Allowed Claim (it does not), the Declaratory Judgment Action is not a 'claim under the Policies' within the meaning of the [Settlement] Agreement," and, thus, "CIGA's expenses incurred in those proceedings . . . are not 'expenses of addressing [a] claim.'" Relying upon California law, Western Trust contends that "a cause of action for declaratory relief does not involve the prosecution of a 'claim' against the defendant," but, rather, "seeks simply to 'declare' rights between the parties." Thus, Western Trust asserts, "[u]nless and until the Trust submits a claim for payment to CIGA[,] . . . there will be no 'claim under the Policies' and consequently, no 'expenses of addressing [a] claim.'"

3

Determining the meaning of the phrase "any claim under the Policies against any Insurance Guaranty Association," as set forth in Paragraph 9B(1) of the Settlement Agreement raises a question of contract interpretation. The Settlement Agreement expressly provides that it "shall be governed by and construed in accordance with the laws of the State of New Hampshire." Thus, we agree with the Liquidator that "[w]hether a declaratory action presents a 'claim' under California law has no bearing on the question whether the Snyder Action presents a 'claim under the Policies' within the [Settlement] Agreement."

In determining the reasonable meaning of the language used by the parties in the Settlement Agreement, we consider "the circumstances and context in which the agreement was negotiated." Id. at 166 (quotation omitted).

According to the Settlement Agreement, when it was being negotiated, Western Trust was pursuing litigation against Zurich-American Insurance Company and related entities in California, known as the "Zurich Litigation." In that litigation, Western Trust asserted a cause of action against CIGA for declaratory relief. See Snyder v. Cal. Ins. Guar. Ass'n, 229 Cal. App. 4th 1196, 1203 (2014) (explaining that in the Zurich Litigation, Western Trust "pled a declaratory relief cause of action against CIGA" seeking "to determine the existence and scope of CIGA's obligations to them in light of Home's liquidation" (quotations and brackets omitted)).

The Liquidator explained to the trial court when he moved for approval of the Settlement Agreement that it

> is different from other settlement agreements previously approved by the Court. In the Settlement Agreement, [Western Trust] and Liquidator release each other from any claim arising from or related to the proofs of claim. However, unlike other settlement agreements, the Settlement Agreement does not resolve all matters arising from or related to the Home insurance policies. . . . As part of the Zurich Litigation, [Western Trust has] asserted claims against [CIGA] under the Home policies, and [Western Trust has], or may, assert such claims against other insurance guaranty associations.

The Liquidator explained that "[w]hen an insurance guaranty association such as [CIGA] responds to a claim under an insolvent insurer's policy, the association generally has a corresponding claim in the insurer's liquidation both for its expenses and any payment to the claimant."

The Liquidator stated that, to "maintain the position of the Home estate and its Class II creditors under the Settlement Agreement regardless of the outcome of [Western Trust's] claim against [CIGA] . . . under the Home

4

policies," the Settlement Agreement addressed the "insurance guaranty association issues . . . as follows":

> [Western Trust] agree[s] to dismiss, without prejudice, [its] claims against [CIGA] in the Zurich Litigation. Settlement Agreement ¶ 10. If [Western Trust] subsequently pursue[s] claims under the Home policies against any insurance guaranty association, [it] acknowledge[s] that the association's expenses of addressing the claim and any recovery from the association may become a claim in the Home liquidation. <u>Id</u>. ¶ 9(B)(1). <u>The Home and its Class II creditors are protected against the impact of such a claim because any such expenses or recovery will be deducted from the recommended amount allowed to [Western Trust] as a Class II claim in the Home liquidation.</u> <u>Id.</u> If the expenses and recovery exceed the recommended amount, [Western Trust] will not recover anything from the Home liquidation. <u>Id</u>. ¶ 9(B)(2).

(Emphasis added.) The record does not contain any objection by Western Trust to the Liquidator's motion.

The Settlement Agreement contains several clauses addressing the Zurich Litigation in which Western Trust's declaratory judgment action is referred to as "claims" asserted by Western Trust against CIGA. For example, the Settlement Agreement provides:

> WHEREAS, [Western Trust is] currently pursuing <u>claims</u> against Zurich-American Insurance Company . . . ;

> WHEREAS, the Parties are desirous of resolving all <u>claims</u> that were asserted, or could have been or could be asserted, between them . . . ;

> . . . .

> 4. <u>Acknowledgement of Other Claims</u>. The Liquidator acknowledges that he is aware of [Western Trust's] pending <u>claims</u> in the Zurich Litigation and takes no position as to those <u>claims</u>. This Settlement Agreement is not intended to affect those <u>claims</u> other than the <u>claim</u> asserted by [Western Trust] in the Zurich Litigation against [CIGA].

> . . . .

> 10. <u>Dismissals</u>. Within ten days of the Effective Date, [Western Trust] shall . . . dismiss or discontinue, without prejudice, [its] <u>claims</u> against [CIGA] in the Zurich Litigation.

(Emphases added.)  Furthermore, in agreeing to dismiss, without prejudice, its "claims" against CIGA in the Zurich Litigation, Western Trust acknowledged in the Settlement Agreement that "in the event [it] pursue[s] <u>any</u> <u>claim</u> under the Policies against any Insurance Guaranty Association," that insurance guaranty association's "expenses of addressing the <u>claim</u> . . . may become a <u>claim</u>" by the insurance guaranty association in the Home liquidation.  (Emphases added.)

The plain language used by the parties in the Settlement Agreement repeatedly describes the declaratory judgment action against CIGA in the Zurich Litigation as a "claim."  Accordingly, we reject Western Trust's assertion that the language in Paragraph 9B(1) referring to "any claim under the Policies against any Insurance Guaranty Association," does not encompass the subsequent declaratory action brought by Western Trust against CIGA in the <u>Snyder</u> action.

Western Trust further argues that, "even if the Declaratory Judgment Action constitutes a 'claim under the Policies' against CIGA . . . , . . . the [Settlement] Agreement does not permit the Liquidator to reduce the Trust's Allowed Claim by CIGA's legal fees in those proceedings because they are not 'Policies-related expenses' under Section 9B(1) of the [Settlement] Agreement."  Western Trust asserts that its interpretation of the Settlement Agreement incorporates RSA 402-C:44, II, which defines Class II "Policy Related Claims," and that the phrase "Policies-related expenses" in the Settlement Agreement is an "apparent typographical error."  (Capitalization omitted.)  Again, we turn to the language of the Settlement Agreement to resolve this issue.

The term "Policies" is defined in the Settlement Agreement as insurance policies "under which [the Western Companies] are named insureds . . . together with all other insurance policies that Home may have issued to [the Western Companies]."  In turn, Paragraph 9B(1) provides that "[Western Trust] agree[s] that any judgments, settlements, or other recoveries by [Western Trust] from any Insurance Guaranty Association <u>with respect to the Policies</u> . . . <u>and</u> the Insurance Guaranty Association's <u>Policies-related expenses</u> incurred after the Effective Date of this Agreement ('Expenses') shall be deducted from the Recommended Amount."  (Emphases added.)

Under the plain language used, "Policies-related expenses" refer to expenses incurred by an insurance guaranty association, such as CIGA, after the effective date of the Settlement Agreement in the event that Western Trust chooses to bring a new action against an insurance guaranty association, such as CIGA, after dismissing its claims in the Zurich Litigation.  CIGA's expenses in responding to the Zurich Litigation prior to the effective date of the Settlement Agreement are not deducted.  Nothing in the language of the Settlement Agreement supports Western Trust's position that the term

6

"Policies-related expenses" as defined by the parties is intended to incorporate the phrase "Policy Related Claims" in RSA 402-C:44, II.

Furthermore, as noted by the Liquidator, "the word 'related' is broad and readily encompasses expenses incurred in defending against litigation over CIGA's obligations respecting Home policies." See Webster's Third New International Dictionary 1916 (unabridged ed. 2002) ("related" is defined as "having relationship : connected by reason of an established or discoverable relation"); see also Black's Law Dictionary 1479 (10th ed. 2014) ("related" is defined as "[c]onnected in some way; having relationship to or with something else"). Thus, the reasonable meaning of the phrase "Policies-related expenses" encompasses all expenses "related" to the policies, including those incurred in defending a declaratory judgment action that asserts rights thereunder.

Finally, Western Trust argues that "the Liquidator's deduction of CIGA's . . . legal expenses from the Trust's Class II priority allowed claim is in conflict with the priority statute." (Capitalization and bolding omitted.) According to Western Trust, "[b]y singling out . . . [Western] Trust by deducting CIGA's expenses incurred in the Declaratory Judgment Action from its Allowed Claim[,] . . . the Liquidator has created an effective subclass within the Class II priority tier in derogation of" RSA 402-C:44.

The Liquidator counters that "the agreed deduction does not create such a subclass," but "is instead a negotiated adjustment to the settlement amount to reflect the particular and unusual circumstances of the Western Trust's claim." As the Liquidator explains, "The Liquidator and . . . [Western] Trust negotiated the amount for which . . . [Western] Trust's claim would be recommended to the Court as the $242.5 million Recommended Amount . . . , '[s]ubject to all the terms of this Settlement Agreement,'" including the deductions set forth in Paragraph 9B. Given the possibility that Western Trust might pursue a claim under the Policies against CIGA, the parties negotiated the terms of the Settlement Agreement to reflect "that . . . [Western] Trust might increase the amount of CIGA's claim in the Home estate for expenses and any additional recovery from CIGA." Therefore, to account for that possibility, "[t]he deductions are intended to maintain the relative position of creditors as they stood at the time of the settlement."

We agree that the negotiated deductions in Paragraph 9B(1) of the Settlement Agreement do not create a subclass in violation of RSA 402-C:44. Rather, the deductions to which the parties agreed represent an adjustment to the negotiated Recommended Amount upon which distributions to all Class II creditors will be made.

For the reasons set forth above, we hold that the trial court's determination that the Liquidator is not entitled under the Settlement

7

Agreement to deduct CIGA's legal expenses incurred in defending the <u>Snyder</u> action was erroneous.

<u>Reversed</u>.

DALIANIS, C.J., and HICKS, LYNN, and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,**
**Clerk**
